IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-604-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| MARK JAMES ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 2646). Citing his obesity and the ongoing COVID-19 pandemic (during which he has twice contracted COVID), the defendant contends that he has demonstrated extraordinary and compelling reasons for his release from custody.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

In supplemental letters/memoranda recently filed by the defendant, he also claims that there is a sentencing disparity between his sentence and those of his co-defendants. He asserts that the prior conviction used to enhance his sentence is no longer valid, and that his original indictment and sentence contain several errors.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to

3

warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### Exhaustion of Administrative Remedies

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

Previously, this court dismissed the defendant's motion without prejudice for the defendant's failure to exhaust his administrative remedies. The defendant has filed a new motion and the government once again raises the exhaustion issue. The government contends that the Bureau of Prisons (BOP) advises that they have no record of any request from the defendant to exhaust his remedies. Additionally, the government asserts that the defendant has provided no evidence that he made such a request, and in his new motion, he has left the date of submission to the warden blank.

In his reply memorandum, the defendant contends that he did, in fact, send a written request to the Warden for compassionate release. He attaches to his reply a document, labeled "Exhibit A" (ECF No. 2664-2) which appears to be a multi-page request directed to the Warden of the facility where the defendant is incarcerated, requesting compassionate release for the reasons outlined in the motion presently before this court. The bottom half of the first page of this document has a place for the Warden's response. The form appears to be complete, dated May 14, 2021, with the correct case number indicated at the bottom. In his reply memorandum, the defendant contends that his request was "rejected and returned to him." According to the defendant, the rejection notice indicated that the request was rejected because "initial request for compassionate release cannot be made through

5

administrative remedy program." The defendant asserts that his prison counselor instructed him that this was the proper way to file a request.

Because the defendant has filed a copy of a document that appears to be appropriately addressed to the Warden, with a response block for the Warden's decision, this court will assume on the record before it that exhaustion has been completed.

## DISCUSSION

### 1. *Defendant's Medical Condition*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States*

*v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant contends that he is obsese, having a body mass index (BMI) of 25.5. It is apparent that he has contracted COVID-19 in the past, but apparently suffered no serious consequences. According to the BOP records, the defendant's condition is "appropriately managed." The defendant has been offered, and declined, a COVID-19 vaccine. According to the CDC, individuals with a BMI of 30 or more present a risk of severe outcome from COVID-19, while a BMI of 25 to 30 (which is considered overweight) only "might" present such a risk.

The defendant's Presentence Report (PSR) (ECF No. 1580) prepared in 2016, indicates that at that time, the defendant reported that he stands 6'0" and weighs 170 pounds. Such a weight and height would not qualify, at the present time, as being overweight, much less obese. Nevertheless, the court will afford the defendant the benefit of the doubt and assume that his BMI, as it currently stands, coupled with the ongoing COVID-19 pandemic, constitutes an extraordinary and compelling reason for consideration of the defendant's motion. But, as show below, a careful examination of the §3553(a) sentencing factors yields to the conclusion that the defendant should not be released at this time.

II. *Additional Arguments Advanced by the Defendant*

After the government responded to the defendant's original motion, the defendant has filed three supplemental letters/memoranda, each raising new issues (ECF Nos. 2732, 2781, 2786). The government has not responded to any of these additional filings.

In his first memorandum (ECF No. 2786), the defendant raises a host of legal

challenges to the validity of his conviction. Specifically, he contends that: (1) his Fifth Amendment grand jury indictment rights were violated; (2) one of his possession charges was "not intended by the grand jury to be part of the charge," (3) during trial there was a constructive amendment of the Indictment; (4) the jury charge improperly used the terms "on or about" relating to the date of one the offenses; and (5) his Guidelines were improperly calculated.

These are all issues that should be raised in a proceeding pursuant to 28 U.S.C. § 2255. In fact, the defendant has already filed one § 2255 which this court denied in March 2020 (ECF No. 2361). Moreover, the defendant has not received prior authorization from the Fourth Circuit Court of Appeals to file a second or successive motion as required under *United States v. Winestock*, 340 F.3d 200 (4th Cir. 2003) and 28 U.S.C. § 2255(h). As a result, this court is without jurisdiction to entertain such a motion or the arguments raised in the defendant's supplemental memoranda (ECF No. 2732).

Next, in a document filed with the court on June 13, 2022 (ECF No. 2781), the defendant cites the Fourth Circuit case of *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), and suggests that a "gross disparity between the sentence that the defendant received in 2016 and the sentencing he would receive today, constitutes an extraordinary and compelling reason for his release." Specifically, the defendant refers to his 2008 conviction for possession with intent to distribute marijuana which was used as an enhancement to his sentencing calculations under 21 U.S.C. § 851. At the time the defendant was sentenced by

this court, the 2008 state conviction qualified as a predicate conviction for § 851 enhancements purposes.

Under the First Step Act, however, the definition of a prior drug conviction has changed.[2] To qualify as a predicate now, the defendant must have served a sentence of more than 12 months. The PSR in the defendant's case reveals that he received a sentence of 2 years probation on the 2008 state court conviction. Accordingly, if sentenced today, the defendant would not be subject to the § 851 enhancement, which would have the net effect of reducing his mandatory minimum sentence from 20 years down to 15 years.[3]

With commendable candor, the defendant suggests that the sentence he is currently serving in this case "is the longest sentence I have ever served." He also suggests that there have been stabbings at his current BOP facility and there is "soon to be a big race war."

The defendant's third supplemental filing (ECF No. 2786), takes issue with the disparity between the sentence imposed on the defendant and those sentences his co-defendants received. He then repeats his argument regarding the new definition of a "felony drug offense" under the First Step Act. He contends that although he was among the least culpable defendants, he nevertheless received a sentence longer than anyone else in the

---

[2] Pursuant to § 401 of the First Step Act, 132 State. 5220, the statute 21 U.S.C. § 802 was amended to add new definitions for "serious drug felony" and "serious violent felony," elements of which require the person to have served a term of imprisonment of more than 12 months. The language now reads: "The term 'serious drug felony' means an offense described in section 924(e)(2) of title 18 for which—(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense."

[3] The First Step Act not only reduced the mandatory minimum penalties, but also changed the conditions under which the apply. A defendant's prior convictions must meet the new definition of "serious drug felony" (or "serious violent felony" if applicable).

9

conspiracy. The defendant concludes by suggesting that he is not a danger to the community, has no violent tendencies, and is a "loving" dad.

The court is not persuaded by any of these arguments. First, with regard to the change in the definition of a predicate offense/serious drug felony under § 851, the defendant's sentence in this case was driven by the sentencing Guidelines, not the mandatory minimum sentence required by law. The mandatory minimum sentence was 240 months, and the defendant's low end range of the Guidelines was higher at 262 months.

In any event, to the extent that the mandatory minimum sentence was lowered by the First Step Act, the court determines that the § 3553(a) factors, itemized and discussed below, compel a conclusion that the defendant should not be immediately released from his current sentence. The facts out lined in the PSR clearly refute the arguments that the defendant was "among the least culpable" defendants in this case.

While it is true that nothing in the PSR indicates that the defendant has a violent tendency—and this court will give the defendant the benefit of the doubt and assume that he is in fact a "loving dad"—these arguments, individually or collectively, do not rise to the level necessary to justify an order from this court directing the defendant's immediate release. The same is true regarding the arguments about stabbings at defendant's facility and the possibility of a future race war. The court is fully aware of the arguments but does not find them supported in the record. Even if they were, they are not compelling enough to justify release.

In summary, therefore, the defendant's reasons mentioned in the supplemental briefs

do not qualify as an extraordinary and compelling reason for release. Additionally, the fact that the mandatory minimum sentence for the defendant's case today would be 5 years lower than what it was when he was sentenced is not a reason for relief either. The defendant was sentenced under the applicable Guidelines, not under a mandatory minimum sentence.

This court is fully aware that the Fourth Circuit Court of Appeals, in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) authorized this court to look at the question of whether a defendant's sentence would be substantially different today from what it was at the time of sentencing. The facts of *McCoy* were, however, quite different from those presented here. In *McCoy*, the defendants were all young individuals who had virtually no criminal record. They received a substantial increase in sentence because of the then-existing "stacking" regime for § 924(c) convictions and they had already served a substantial portion of their sentences. Here, the defendant's sentence was not stacked under § 924(c). He was in his 30s when he committed the crimes at issue. Unlike the defendants in *McCoy*, he has several convictions on his record for drug possession and distribution.

Thus, although this court is fully aware of its authority, under *McCoy*, to modify the defendant's sentence based upon the changed in the sentence laws, the court respectfully exercises its discretion to decline to do so.

*Factors Under § 3553(a)*

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated. The

court will address the § 3553(a) factors in turn.

1.   *Nature and Circumstances of the Offense.*  The defendant was one of 32 defendants named in a 1-Count Superseding Indictment charging him with being a member of a conspiracy to possess with intent to distribute and distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851.

The government filed an Information pursuant to 21 U.S.C. § 851 notifying the defendant that he was subject to enhanced penalties as a result of the defendant's previous felony convictions.

In May 2016, a jury found the defendant guilty on Count 1, based on evidence presented at trial. With respect to the type and manner of controlled substances as to Count 1, the jury unanimously found that the entire conspiracy as a whole distributed or possessed with intent to distribute 5 kilograms or more of cocaine powder and 28 grams or more of cocaine base.

At sentencing, the defendant was held accountable for 65,000 grams of cocaine powder and 32 grams of crack cocaine. This converted to a marijuana equivalent of 13,114.27 kilograms of marijuana equivalent. In addition, the evidence revealed that the defendant maintained a shed/barn adjacent to his mother's house (where he resided), which allowed the defendant to use as a location to store and sell drugs. Even more importantly, a search warrant executed at the defendant's mother's residence, turned up two semi-automatic weapons with magazines. Also, five sets of digital scales were recovered from the location in the trailer's living area, as well as 5 cell phones and numerous rounds of

ammunition. The trailer was also equipped with surveillance cameras which recorded via a DVR system.

The Presentence Report (PSR) (ECF No. 1580) determined the defendant's total offense level to be 38 and the criminal history category was III. This resulted in a Guideline sentencing range of 262 to 327 months incarceration. This court sentenced the defendant to 270 months. Of this sentence, the defendant has served approximately 83 months.

2. *History and Characteristics of the Defendant*. The defendant was reared by his parents in Etawville, South Carolina in a loving and stable home. He reported to the Probation Office that he enjoyed a good childhood and described his relationship with his parents as "close." The defendant has never been married, but has been in a long term relationship with a female who is the father of one child. The defendant has four other children by relationships with two other women. According to the 2016 PSR, the defendant reported that he is "good physical health."

*Post Sentencing Conduct*

The defendant attests that he has had almost an excellent disciplinary record in prison and that he has had only one disciplinary ticket during his 6 years in prison. The government notes that in August 2019, the defendant was sanctioned for possession of a hazardous tool. For this violation, the defendant lost 41 days of good conduct credit.

The defendant also attests that he has participated in a mandatory drug program class. Neither the defendant nor the government included in their filings any reports from the BOP regarding educational and vocational courses taken by the defendant.

3.  *Seriousness of the Crimes*.  As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4.  *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*.  The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.  The court views this as an important factor to be addressed in considering the present motion.  This is perhaps one of the most important factors counseling against the defendant's immediate release.

7.  *Need to Avoid Unwarranted Disparity*.  Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

The defendant raises the fact that several of his co-defendants received lesser sentences.  Most of these defendants pleaded guilty, accepted responsibility, and cooperated with law enforcement authorities.  Many received downward departure motions.  Also, three of defendant's co-defendants received life sentences.  Other defendants received 262, 244,

240, 210, and 120 months (4 defendants), respectively. Thus, the defendant's argument that he was the least culpable, yet most punished, of all the defendants in the case rings hollow.

Finally, to the extent the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of § 3624(c)(2) of 18, United States Code, as the Director determines appropriate.

## CONCLUSION

After careful consideration of the defendant's individual record, with particular emphasis on the nature and circumstances of his offense, his prison record, and all of the other relevant circumstances, the court is constrained to deny the defendant's motion. In short, even if the defendant has demonstrated extraordinary and compelling reasons for his release in terms of his medical condition, the § 3553(a) factors lead to the inescapable conclusion that the defendant's release after serving only a portion of his sentence is inappropriate at this time.

The defendant was convicted after a hard-fought trial for a serious drug offense. The

amount of contraband associated with the defendant was substantial. The search warrant executed on the defendant's residence revealed two high-powered rifles, and other loaded firearms, digital scales, cell phones, and other items of drug paraphenalia. The defendant allowed others to store drugs in a structure near his mother's residence. Prior to his federal conviction, he had four drug-related convictions in state court. He has been sanctioned by the BOP for possessing a hazardous tool, a serious violation of prison standards. Finally, at present, he has served only a small portion of his sentence.

For all the foregoing reasons, the defendant's motion is respectfully denied (ECF No. 2646).

IT IS SO ORDERED.

August 17, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge